IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Clinton G. Brotemarkle, III, | Case No. 1:23-cv-04382-JDA |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Mark Washum; Ascend, LLC *a/k/a* Ascend Logistics, LLC; Milan Supply Chain Solutions, Inc. *f/k/a* Milan Express Company, Inc.; John/Jane Does; Richard Roe Corporations, | |
| Defendants. | |

This matter is before the Court on motions for partial summary judgment and for the Court to resolve their partial summary judgment motion on the record or, in the alternative, hold a hearing (the "on-the-record motion") filed by Defendants Mark Washum; Ascend, LLC; and Milan Supply Chain Solutions, Inc. ("Moving Defendants"), and a motion for extension of time filed by Plaintiff. [Docs. 38; 40; 41; *see* Doc. 39.] For the reasons that follow, Moving Defendants' motions are granted and Plaintiff's motion is denied.

Plaintiff filed this action in the Aiken County Court of Common Pleas on July 27, 2023. [Doc. 1-1.] On August 30, 2023, Moving Defendants removed the action to this Court based on diversity jurisdiction. [Doc. 1.] On June 14, 2024, Moving Defendants filed a motion for partial summary judgment. [Doc. 38; *see* Doc. 39.] Plaintiff failed to file a response, and on July 3, 2024, Moving Defendants filed the on-the-record motion. [Doc. 40.] Two days later, on July 5, Plaintiff filed a response opposing the on-the-record

motion. [Doc. 42.] The same day, Plaintiff filed a motion for extension of time pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, requesting that the Court grant him 15 additional days to obtain affidavits and medical records from his cardiologists to be used to oppose Moving Defendants' motion for partial summary judgment. [Docs. 41; 41-1.] On July 19, 2024, Plaintiff filed a response opposing Defendants' motion for partial summary judgment, and on July 22, 2024, Plaintiff filed a supplement to the response. [Docs. 45; 46.]

## **BACKGROUND**

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Viewed in the light most favorable to Plaintiff, the summary judgment record reveals the following facts.

**Introduction**

This personal injury action stems from an incident that occurred on September 15, 2020, involving Defendant Mark Washum ("Washum"), who was driving a truck into the Bridgestone Americas Inc. facility in Aiken, South Carolina (the "Accident"). Plaintiff was a security guard assigned to that facility. Plaintiff has a long history of chronic heart failure and disability.

As Washum approached Gate 2 of the plant on the date of the Accident, Plaintiff signaled Washum to proceed but Washum drove his truck into the gate arm before it was fully raised, resulting in a collision where the gate arm broke off and struck Plaintiff. Plaintiff filed suit alleging injuries to his hand and leg. In addition, he claims that he was

unable to exercise as a result of his injuries and that his inability to exercise exacerbated his heart condition.

**Plaintiff's Medical Background, the Accident, and the Events After**

Plaintiff is approximately 71 years old. [Doc. 39-1 at 6.] He has been a chronic smoker and has a lengthy history of congestive heart failure and coronary artery disease. [*Id.* at 16–18, 64.] Over his lifetime, he has suffered seven heart attacks, undergone two bypass surgeries (1994 and 2002) and three ablations,[1] and has had Barostim and pacemaker devices implanted.[2] [*Id.* at 14–15, 62, 67.]

Plaintiff was hired as a security officer for Securitas in February 2020 and assigned to work at a shipping gate, Gate 2, at the Bridgestone Americas, Inc. tire facility in Aiken, South Carolina. [*Id.* at 7, 8, 10, 20.] In that job, he identified and otherwise checked in vehicles arriving at the plant to pick up tires. [*Id.* at 8.] Plaintiff would raise the gate and motion drivers through when they were approved to enter. [*Id.* at 12–13.]

On September 15, 2020, Washum arrived at the facility in a vehicle to pick up tires.

---

[1] "Cardiac ablation is a treatment for irregular heartbeats, called arrhythmias. It uses heat or cold energy to create tiny scars in the heart. The scars block faulty heart signals and restore a typical heartbeat." *Cardiac ablation*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/cardiac-ablation/about/pac-20384993 (last visited July 12, 2024).

[2] "The Barostim Neo System includes a pulse generator that is implanted below the collar bone and is connected to a lead that attaches to the carotid artery in the neck." *FDA approves new device to improve symptoms in patients with advanced heart failure*, U.S. Food & Drug Administration, https://www.fda.gov/news-events/press-announcements/fda-approves-new-device-improve-symptoms-patients-advanced-heart-failure (last visited July 11, 2024). "After the device is implanted, a physician tests and programs the device, which delivers electrical impulses to cells in the neck called baroreceptors, which sense how blood is flowing through the carotid arteries and relays information to the brain." *Id.* "The brain, in turn, sends signals to the heart and blood vessels that relax the blood vessels and inhibit the production of stress-related hormones to reduce heart failure symptoms." *Id.*

[*Id.* at 20–21.]  He stopped at the gate, handed Plaintiff his driver's license, and gave Plaintiff his pick-up number.  [*Id.* at 21–22.]  Plaintiff informed Washum that his number had been refused and that he could not continue into the plant but that Plaintiff could let him through the gate so that he could turn around.  [*Id.* at 22–23.]

As Plaintiff was raising the gate arm, and before it was completely raised, Washum ran into it with his truck.  [*Id.* at 24.]  The arm broke off of the base, hit Plaintiff, and "slung [him] into [Washum's] truck."  [*Id.*]  The gate arm then snapped back and "slung [him] back in the opposite direction," twisting him and causing a laceration to his right hand.  [*Id.*]

Plaintiff immediately called his supervisors, one of whom bandaged his hand.  [*Id.* at 25–27.]  Plaintiff subsequently obtained treatment at an urgent care facility.  [*Id.* at 31.]  His chief complaints were a cut on his right hand and back pain.  [*Id.*]  An x-ray did not reveal any bone breaks or disc damage.  [*Id.* at 34, 36.]  The medical provider placed both a Steri-Strip and a bandage on Plaintiff's right hand, and he did not require stitches.  [*Id.* at 32.]

Plaintiff did not return to work immediately after the incident, but instead he was placed on worker's compensation leave and began physical therapy twice a week, along with some at-home exercises.  [*Id.* at 35, 37–39, 41.]  Shortly thereafter, he began to receive worker's compensation benefits.  [*Id.* at 41.]

In late February 2021, Plaintiff was released to return to light duty at Securitas, and he worked in a "[s]canning" position.[3]  [*Id.* at 43–45.]  He continued in that position until

---

[3] Moving Defendants state that Plaintiff was scanning workers for the COVID virus.  [Doc. 38-1 at 5–6.]

on or around April 5, 2021, when he was sent home because of atrial fibrillation.[4]  [*Id.* at 45.]  He was told not to return to work until he received medical clearance.  [*Id.* at 46.]  Although he maintains that his physical therapist provided Securitas with the necessary documentation for him to return to work, Securitas denied receiving it.  [*Id.* at 46–47.]  He has not worked for Securitas since April 5, 2021, nor has he applied to work anywhere else.  [*Id.* at 54.]

On or about April 12 and 13, 2021, Plaintiff underwent a successful atrial ablation procedure.  [*Id.* at 48–49.]  On May 25, 2021, he underwent a catheterization procedure wherein it was noted that he had severe coronary artery disease.  [*Id.* at 50; Doc. 39-3 at 27, 33.]  In September 2021, Plaintiff informed his primary cardiologist, A. Bleakley Chandler, M.D., that he had not had any chest pain since the May catheterization procedure.  [Doc. 39-1 at 51–52.]  During that visit, Dr. Chandler instructed Plaintiff to make some lifestyle changes, including eating properly, as Plaintiff had not been following his diet.  [*Id.* at 53.]  He underwent another successful atrial ablation procedure on December 6, 2021.  [*Id.* at 55.]

During a June 9, 2022, appointment, Plaintiff reported that he was doing well from a cardiovascular standpoint.  [Doc. 39-4 at 5.]  Likewise, during a March 22, 2023, visit, Plaintiff stated that he "has done well overall."  [Doc. 39-1 at 59 (internal quotation marks omitted).]  Plaintiff was told during that consultation, however, that he needed "lifestyle changes."  [*Id.* at 60 (internal quotation marks omitted).]  On November 8, 2023, Plaintiff agreed to undergo the implantation of a Barostim device.  [*Id.* at 61–62.]

---

[4] "Atrial fibrillation (AFib) is an irregular and often very rapid heart rhythm." *Atrial fibrillation*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/symptoms-causes/syc-20350624 (last visited July 22, 2024).

**The Present Action**

Plaintiff's Complaint alleges causes of action for negligence/negligence per se/gross negligence/recklessness and negligent hiring, retention, training, and supervision. [Doc. 1-1 ¶¶ 20–33.] Plaintiff requests compensatory and punitive damages. [*Id.* at 10–11.] He maintains that he is entitled to, among other damages, damages for exacerbation of his heart condition due to physical inactivity due to the Accident. [Doc. 1-3.]

Moving Defendants have retained an expert in cardiology/heart disease, Allen Dollar, M.D. [Doc. 36.] Dr. Dollar has provided a report setting forth his expert opinion on Plaintiff's history of cardiac failure and why Plaintiff's claim that his heart failure symptoms have been exacerbated by inactivity is without merit. [Doc. 36-1.] Dr. Dollar reviewed Plaintiff's medical records for University Hospital/Piedmont Augusta, including the office records of Dr. Santosh Varkey and Dr. Arthur Chandler from the years 2021 through 2023. [*Id.*]

Dr. Dollar's opinion, after reviewing Plaintiff's medical records, is (1) that "there is no scientifically plausible mechanism by which [Plaintiff's] injury to his leg and his hand would lead to worsening of his coronary artery disease, congestive heart failure, or atrial fibrillation"; (2) that "there is no evidence in the medical record to suggest [Plaintiff] was severely restricted in his activity because of his injuries"; and (3) that "there is no objective evidence that [Plaintiff's] heart condition worsened after he sustained his injuries." [*Id.* at 4.]

## APPLICABLE LAW

**Summary Judgment Standard and Procedure**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Id.* at 248.  "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

Additionally, under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."

Finally, Local Civil Rule 7.06, D.S.C. provides that "[a]ny memorandum or response of an opposing party must be filed with the court within fourteen (14) days of the service of the motion unless the court imposes a different deadline."  The Rule further states that "[i]f no memorandum in opposition is filed within fourteen (14) days of the date of service, the court will decide the matter on the record and such oral argument as the movant may be permitted to offer, if any."

**DISCUSSION**

**Plaintiff's Rule 56(d) Motion**

Here, because the date of service of Moving Defendants' motion for partial summary judgment was June 14, 2024, under Local Civil Rule 7.06, Plaintiff's deadline for filing a memorandum or response in opposition was June 28, 2024, as stated on the docket.  [Doc. 38.]  Plaintiff failed to file any response to the motion for partial summary judgment by that date, prompting Moving Defendants to file the on-the-record motion.  [Doc. 40.]  As noted, on July 5, 2024, Plaintiff filed a motion requesting additional time pursuant to Rule 56(d) to obtain affidavits and records from his medical providers in order to respond to Moving Defendants' motion for partial summary judgment.  [Doc. 41.]  Plaintiff's motion was untimely filed.

Plaintiff does not dispute that Local Civil Rule 7.06 allows only 14 days for a party to respond to a summary judgment motion, but he instead maintains that his time to respond had not expired on July 5 because Rule 56 of the Federal Rules of Civil Procedure provides that a response to a summary judgment motion must be filed within *20* days.  [Doc. 42 at 2.]  Plaintiff is incorrect.  Rule 56 does not reference the time in which a response to a summary judgment motion must be filed.  Fed. R. Civ. P. 56.  Accordingly, Local Civil Rule 7.06 controls, Plaintiff's deadline for responding to the summary judgment motion was June 28, 2024, and Plaintiff's Rule 56(d) motion requesting more time—filed after the deadline for responding to the summary judgment motion—was untimely, as was Plaintiff's later-filed response opposing the summary judgment motion.

Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Here, Plaintiff has not demonstrated that the untimeliness of either his motion for an extension or his response opposing summary judgment were due to excusable neglect.  The Supreme Court provided guidance concerning the meaning of "excusable neglect" in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), and noted that the term could extend to ignorance of the rules, *id.* at 392.  The Court explained, "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."  *Id.*  The Fourth Circuit Court of Appeals has noted that "'[e]xcusable neglect' is not easily demonstrated, nor was it intended to be."  *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996); *see Agnew v. United Leasing Corp.*, 680 F. App'x 149, 155 (4th Cir. 2017).  "[A] district court should find excusable neglect only in the *extraordinary cases* where injustice would otherwise result."  *Thompson*, 76 F.3d at 534 (internal quotation marks omitted).  Additionally, even if a party demonstrates excusable neglect, "whether to grant an enlargement of time still remains committed to the discretion of the district court."  *Id.* at 532 n.2.

When determining whether there has been excusable neglect, courts take into account all relevant circumstances, including "(1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the

reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith." *Fernandes v. Craine*, 538 F. App'x 274, 276 (4th Cir. 2013).  Of these factors, the third is the most important.  *Id.*

Here, Plaintiff's Rule 56(d) motion was only one week late and Plaintiff's opposition to Moving Defendants' motion for partial summary judgment was only three weeks late and there is no reason to believe Moving Defendants would be prejudiced by the delay were the Court to allow the late filing.  However, regarding the most important factor, the reason for the delay, the Court is at a loss for understanding how the delay occurred.  Even in the face of Moving Defendants' citation to the applicable Local Civil Rule requiring Plaintiff to file his response within 14 days of Moving Defendants' filing of their summary judgment motion [Doc. 40 ¶ 2], Plaintiff simply asserts, without explanation, that Rule 56 of the Federal Rules of Civil Procedure allows a party 20 days to respond to a summary judgment motion.[5]  [Doc. 42.]  However, Rule 56 makes no mention of a 20-day period, and Plaintiff offers no explanation for why he believed—and purports to continue to believe—that it does.  In the absence of any support for that position, Plaintiff's continued insistence that Rule 56 allows a party 20 days to respond to a summary judgment motion calls into question whether Plaintiff is acting in good faith.  In any event, even assuming that he is and was, the Court concludes that counsel's unexplained legal error does not amount to excusable neglect.  *Cf. Feargrounds, LLC v. Old Time Contractors*, No. WDQ-10-0087, 2010 WL 1759577, at *2–3 (D. Md. Apr. 30, 2010) (concluding that bankruptcy court acted within its discretion by refusing to consider counsel's untimely response to a

---

[5] Moreover, as noted, the docket in this case lists the deadline for the response to Moving Defendants' motion for partial summary judgment as June 28, 2024.  [Doc. 38.]

summary judgment motion when the missed deadline was due to counsel's failure to appreciate that the applicable local bankruptcy rule required that any response to a summary judgment motion be filed within 14 days of the filing of the summary judgment motion). The Court therefore denies Plaintiff's motion for extension of time, grants Moving Defendants' on-the-record motion, and does not consider Plaintiff's untimely filed response opposing Defendant's motion for partial summary judgment.

**Moving Defendants' Motion for Partial Summary Judgment**

Moving Defendants argue that they are entitled to partial summary judgment with regard to Plaintiff's claims that his heart condition was exacerbated due to reduced activity levels caused by the Accident. [Doc. 38.] Moving Defendants specifically note that Plaintiff has not forecasted any expert testimony and argue that, without such testimony, there is no basis for a reasonable finding by the jury that the Accident proximately caused Plaintiff any heart-related injury. [*Id.* at 11–15.] The Court agrees.

Because this is a diversity case, South Carolina law applies. *See Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1036 n.5 (D.S.C. 2021) ("A federal court sitting in diversity . . . jurisdiction generally applies the relevant substantive law of the state in which the court sits."). Under South Carolina law, "expert evidence is required where a factual issue must be resolved with scientific, technical, or any other specialized knowledge." *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 175 (S.C. 2010). On the other hand, "[e]xpert testimony is not required to prove proximate cause if the common knowledge or experience of a layperson is extensive enough." *Wilder v. Blue Ribbon Taxicab Corp.*, 719 S.E.2d 703, 707 (S.C. Ct. App. 2011) (internal quotation marks omitted); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab.*

*Litig.*, 227 F. Supp. 3d 452, 469 (D.S.C. 2017) ("[A]ll jurisdictions require expert testimony at least where the issues are medically complex and outside common knowledge and lay experience."). The Supreme Court of South Carolina has explained:

> The determination of whether expert testimony is required is a fact-specific inquiry that can only be made on a case-by-case basis, and due to the posture of this case and the limited record before this Court, we can do no more than state the guidelines to be applied in particular cases.
>
> The general rule in South Carolina is that where a subject is beyond the common knowledge of the jury, expert testimony is required. Conversely, where a lay person can comprehend and determine an issue without the assistance of an expert, expert testimony is not required. *See O'Leary–Payne v. R.R. Hilton Head, II, Inc.,* 371 S.C. 340, 349, 638 S.E.2d 96, 101 (Ct. App. 2006) ("[E]xpert testimony is not necessary to prove negligence or causation so long as lay persons possess the knowledge and skill to determine the matter at issue."). Deciding what is within the knowledge of a lay jury and what requires expert testimony depends on the particular facts of the case, including the complexity and technical nature of the evidence to be presented and the trial judge's understanding of a lay person's knowledge. *See Sharpe v. S.C. Dep't of Mental Health,* 292 S.C. 11, 14, 354 S.E.2d 778, 780 (Ct. App. 1987) ("The application of the common knowledge exception to the requirement of expert testimony in proving negligence depends on the particular facts of a case."). Ultimately, due to the fact-specific nature of the determination, it is a question that must be left within the discretion of the trial judge.

*Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013) (some internal citations omitted).

Even assuming that Plaintiff has suffered some worsening of his heart condition since the Accident, whether such worsening was proximately caused by inactivity due to the Accident is a complicated question that a layperson on a jury could not reasonably decide without guidance from someone with specialized knowledge. *Cf. In re Lipitor*, 227

13

F. Supp. 3d at 478 ("[T]he effects of drugs on the human body and the causation of a complicated, progressive disease[] like diabetes do require expert testimony."); *Wright v. Bi-Lo, LLC*, No. 0:18-cv-3206-JFA, 2020 WL 13616439, at *7 (D.S.C. Mar. 27, 2020) ("Based on the specific facts of this case, an expert is needed to untangle the complex web of prior incidents, prior degenerative injuries, and prior treatments from those injuries and treatments that would be attributable to the shopping cart incident.").  Accordingly, the Court concludes that in the absence of any expert testimony supporting a finding that Plaintiff's heart condition was exacerbated due to inactivity from his injuries from the Accident, Moving Defendants are entitled to summary judgment on the issue of whether the Accident proximately caused an exacerbation of Plaintiff's heart condition.

## **CONCLUSION**

Wherefore, based upon the foregoing, Moving Defendants' motions for partial summary judgment [Doc. 38] and for the Court to resolve their partial summary judgment motion on the record or, in the alternative, hold a hearing [Doc. 40] are GRANTED and Plaintiff's Rule 56(d) motion for extension of time [Doc. 41] is DENIED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

July 24, 2024
Columbia, South Carolina